UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

C. A. S. (XXX-XX-7825)                          CIVIL ACTION NO. 10-cv-0472

VERSUS                                          JUDGE HICKS

U. S. COMMISSIONER SOCIAL                       MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

**Introduction**

Plaintiff, who was born in 1960 and did not graduate high school, applied for disability benefits based on limitations related to fibromyalgia, depression, and other problems.  ALJ Leslie John Rodriguez held a hearing and issued a written decision that denied the claim.  The Appeals Council denied Plaintiff's request for review, and Plaintiff filed this civil action to challenge the Commissioner's final decision.  Plaintiff's principal argument is that the ALJ chose the opinion of a non-examining state agency psychologist over that of an examining psychologist. For the reasons that follow, it is recommended that the Commissioner's decision be reversed and the case be remanded.

**Summary of the ALJ's Decision**

In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past

relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there are jobs that exist in significant numbers that the claimant can perform. If, at any step, the claimant is determined to be disabled or not disabled, the inquiry ends. See Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007).

The ALJ found that Plaintiff was not engaged in substantial gainful activity (step one) and suffered from the following severe impairments (step two): chronic fatigue syndrome, musculoskeletal pain, obesity, panic disorder, and depressive disorder. He found at step three that those impairments did not meet or equal a listed impairment. Tr. 9-12.

The ALJ viewed the medical evidence and testimony and assessed Plaintiff's residual functional capacity ("RFC"). He found that Plaintiff had the RFC to perform light work, reduced by certain climbing, kneeling, and other physical limitations. Pertinent to this appeal, he also found moderate limitations in the ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods; and interact appropriately with the general public. The ALJ added that moderate limitations in these mental abilities

was defined as "moderate limitations, but with the ability to perform the task satisfactorily." Tr. 13.

Plaintiff did not have any past relevant work (step four) within the meaning of the regulations. The ALJ entered a finding for her at that step. The ALJ next turned to step five, which asked whether there are other jobs available in the economy that the claimant could perform. A vocational expert ("VE") testified that a person with the RFC assessed by the ALJ and with Plaintiff's age, education, and work experience would be able to perform the requirements of a job such as office helper (166,200 in the national economy; 2,500 in Louisiana) and receptionist (99,685 in the national economy; 1,276 in Louisiana). The ALJ accepted that testimony and found at step five that Plaintiff was not disabled. Tr. 15-17.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

Plaintiff argues that the ALJ's determination of her mental RFC is not supported by substantial evidence because the ALJ relied on the opinion of a non-examining psychologist that is in conflict with the opinion of an examining psychologist. Plaintiff makes the related argument that the ALJ did not meet the step five burden because the question posed to the VE did not include the more limited RFC suggested by the opinion of the examining psychologist.

The examining source was Thomas E. Staats, Ph.D., a clinical neuropsychologist, who conducted a consultative examination at the request of the Agency. Plaintiff exhibited some paranoia and anger during the examination, and she said she had at least one breakthrough panic attack each day. Her short and long-term memories were intact, but her intermediate memory was weak. She interacted poorly on a one-to-one basis. Dr. Staats diagnosed major depressive disorder with possible psychotic features, pain disorder associated with both psychological factors and a general medical condition, panic disorder, and a generalized anxiety disorder. He stated that Plaintiff "clearly needs psychiatric intervention, which (she) is currently refusing." He labeled her sustained concentration and adaptation as "marginal." He described her persistence and social interaction as "poor." Tr. 235-38.

A few days after Dr. Staats submitted his report to the Agency, Tom Ray, Ph.D., a medical consultant for the Agency, reviewed the records (but did not examine Plaintiff) and completed a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment form. The first form asked the consultant to indicate the claimant's degree of limitation in areas such as activities of daily living, difficulty in maintaining social

functioning, and difficulty in maintaining concentration, persistence, or pace. The choices were none, mild, moderate, marked, and extreme. Dr. Ray checked moderate on the three examples given. Tr. 255. On the Mental RFC form the choices are not significantly limited, moderately limited, and markedly limited. Dr. Ray found that Plaintiff was moderately limited to be punctual, work in coordination with or in proximity to others without being distracted, complete a normal workday and workweek without interruption from psychological based symptoms and perform at a consistent pace, and the ability to interact appropriately with the general public. Tr. 259-60.

Dr. Ray gave reasons for his conclusions at the end of the report. It is obvious that he relied heavily upon Dr. Staats' report with regard to the mental limitations. In his narrative of reasons, he repeated Staats' findings that Plaintiff had marginal concentration, adaptation and social judgment, and poor persistence and social interaction. Tr. 261.

At the hearing, counsel for Plaintiff read from correspondence between himself and Dr. Staats, in which Dr. Staats correlated his terminology (poor, marginal, etc.) with the terms (mild, marked, extreme) used by the Agency. Counsel explained that when Dr. Staats says marginal, he means the person has a mild limitation; when he says poor, he means the person has a marked to extreme limitation. The VE was asked whether, if those interpretations were applied so that the claimant had marked limitations in persistence and social interaction, jobs would be available that the claimant could perform. The VE testified that the claimant would not be able to maintain any job. Tr. 38-40. The day after the hearing, counsel faxed the ALJ a copy of the explanatory letter from Dr. Staats. Tr. 292-94.

The ALJ, in his written decision, summarized the report from Dr. Staats and specifically acknowledged that Dr. Staats clarified the terminology in his reports to mean that poor is a marked to extreme limitation. Tr. 11. The ALJ also reviewed Dr. Ray's report, which included no greater than moderate limitations. Tr. 12. The ALJ assessed an RFC that is supported by the findings of the non-examining Dr. Ray but not by the (explained) findings of the examining Dr. Staats.

Disability cases typically involve three types of medical sources: (1) a treating source who regularly provides care to the claimant; (2) an examining source who conducts a one-time exam of the claimant; and (3) a reviewing or non-examining source who has never examined the claimant, but read the claimant's files to provide guidance to an adjudicator. Giles v. Astrue, 2011 WL 2847449, *4 (5th Cir. 2011), citing 20 C.F.R. § 404.1527(d).

Because a treating source is most familiar with the claimant's impairments, his opinion should be accorded great weight. If it is well supported, it may be given controlling weight. Section 404.1527(d)(2). If there is no competing first-hand medical evidence, the ALJ may not disregard the opinion of a treating physician without full consideration of relevant regulatory factors. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003), citing Newton v. Apfel, 209 F.3d 448, 456-58 (5th Cir. 2000). There is no opinion from a treating source in this case.

One of the factors used to weigh any medical opinion is supportability, meaning the presentation of relevant evidence to support an opinion. The regulations provide that the better an explanation a source provides for an opinion, the more weight the agency will give

the opinion.  Furthermore, "because non-examining sources have no examining or treating relationship with [the claimant], the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions."  20 C.F.R. § 404.1527(d)(3).

With respect to state agency medical or psychological consultants, such as Dr. Ray, the ALJ must consider their findings and opinions, but he is not bound by them. Section 404.1527(f)(2)(i).  Unless a treating source's opinion is given controlling weight, the ALJ must explain in the decision the weight given to the opinions of a state agency medical or psychological consultant.  Section 404.1527(f)(2)(ii).

The Fifth Circuit has held that "an ALJ may properly rely on a non-examining physician's assessment when ... those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." Carrier v. Sullivan, 944 F.2d 243, 246 (5th Cir. 1991), quoting  Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990).

The ALJ acknowledged that Plaintiff had depression and anxiety/panic attacks, but he pointed out that she had not sought treatment from any mental health professionals, and she had never been hospitalized for a mental condition.  The ALJ noted that Plaintiff was prescribed psychotropic medications by her pain management physicians and demonstrated problems at her examination, including that she "interacted poorly."  He concluded, based on this evidence, that Plaintiff had only moderate limitations in mental abilities as specified in his RFC.  Tr. 15.

The ALJ made specific reference to Dr. Staats' explanation that his use of the term poor indicated a marked to extreme limitation, but the ALJ did not specifically discuss why Dr. Staats' findings, given that interpretation, should be discounted in favor of the opinion from the non-examining psychologist. Dr. Ray's report relied heavily upon the findings of Dr. Staats, but Dr. Ray did not have the benefit of Dr. Staats' explanation about his terminology. Given Staats' explanation, Dr. Ray's findings do contradict those of the examining source.

Perhaps there is some way the ALJ could have reconciled the record to support his conclusion, but no such reasons were given. The Government points out various aspects of the record that might support a finding of a lesser limitation than suggested by Dr. Staats, but "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." Newton, 209 F.3d at 455. See also Cole v. Barnhart, 288 F.3d 149, 151 (5th Cir.2002) ("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so.").

Dr. Staats' report, as clarified by him, suggests a degree of limitation much greater than the RFC found by the ALJ. The VE testified that a person with limitations such as Dr. Staats suggested, and possessing the other vocational factors found by the ALJ, would not be able to work. There is no competing evidence from an examining source on which the ALJ may properly rely to outweigh those findings. Accordingly, reversal is required, as it was in Alexander v. Astrue, 2008 WL 918527, *4 (W.D. La. 2008) (Hayes, M.J.), when the

report from a non-examining psychologist, on which the ALJ relied, was at odds with Dr. Staats' findings of "poor" abilities in some areas.

This is one of many cases in which reversal and remand is required, at least in part, because Dr. Staats did not employ language contemplated by the Agency's regulations, rulings, and manuals, which gave rise to confusion in the proceedings. <u>See</u> <u>e.g.</u>, <u>J.F.C. v. Commissioner</u>, 2010 WL 3259401 (W.D. La. 2010); <u>K.T.S. v. Commissioner</u>, 2010 WL 3259385 (W.D. La. 2010); <u>Thompson v. Astrue</u>, 2009 WL 2222529 (W.D. La. 2009); and <u>M.L.M. v. Astrue</u>, 2009 WL 3156542 (W.D. La. 2009). If Dr. Staats had used proper terminology, Dr. Ray would have been able to more accurately assess the impact of Staats' report and perhaps avoided this entire issue. If the Agency has not already done so, it is asked to instruct Dr. Staats to employ language contemplated by the Agency's regulations and procedures rather than terms of his own creation whose meanings are not clear to those who must rely on his reports. The use of the correct language could save many hours and resources needlessly expended by the Agency, the courts, and counsel for the claimants in these cases.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be reversed pursuant to the fourth sentence of 42 U.S.C. § 405(g), and that this case be remanded for further proceedings consistent with the court's decision.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of July, 2011.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE